**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BERNARD WILLIAMS,** | : | **CIVIL NO. 3:14-CV-1600** |
| | : | |
| **Plaintiff,** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **KIMBERLY BARKLEY,** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case

This is a *pro se* civil rights action brought by Bernard Williams, a state inmate, through the filing of a complaint, (Doc. 1.), a complaint which Williams subsequently amended on September 30, 2014.  (Doc. 12.)  Williams' amended complaint names Kimberly Barkley, the secretary of the Pennsylvania Board of Probation and Parole, as the sole defendant in this matter.  (Id.)  In his amended complaint, Williams then explains that he was convicted in 2008 of some state offense.  (Id.)  As a result of this conviction Williams received a 2-to-4 year sentence and initially had a maximum release date of March 3, 2012.  (Id.)  Williams was then released on state parole from this conviction in March of 2010, but had his parole violated on September 8, 2011, after Williams was charged with some new criminal offense which he committed while on parole supervision.  (Id.)  As a result of this parole revocation, it appears that

Williams lost credit for his "street time," the time he had spent on the street on parole, and upon the revocation of his parole received an additional 18 months in jail as well as a 5-to-10 year sentence for the new criminal charges that were lodged against him. (Id.)

Voicing the view that this revocation decision–a decision compelled by Williams' own criminal recidivism–violated constitutional double jeopardy principles, Williams now seeks to sue the secretary of the Parole Board and demands damages for "every unlawful day" that he has spent in prison due to the revocation of his parole and the imposition of a new criminal sentence upon him. Williams demands this relief even though he acknowledges that this parole revocation decision has never been vacated or set aside. (Id.) Moreover, Williams seeks to hold Secretary Barkley personally liable for this action even though the only allegation he levels against Barkley is that she denied an administrative appeal that he took challenging this parole revocation as untimely filed. (Id.) It is on the basis of this thin reed that Williams endeavors to assert personal liability on the part of defendant Barkley.

The defendant has now moved to dismiss this complaint, arguing that Williams has failed to state a claim upon which relief may be granted. (Doc. 16.) This motion is fully briefed by the parties, (Docs. 17 and 18.) and is, therefore, ripe for resolution.

For the reasons set forth below, it is recommended that the motion to dismiss be granted.

## II.     Discussion

### A.     Rule 12(b)(6) Motion to Dismiss– Standard of Review

The defendant has moved to dismiss this *pro se* complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years.  Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff.  Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do."  Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level."  Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679.  According to the

Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'  In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has also observed: "The Supreme Court in <u>Twombly</u> set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in <u>Iqbal</u>. The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' <u>Twombly</u>, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' <u>Iqbal</u>, 129 S.Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' <u>Id</u>. A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " <u>Burtch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 220-21 (3d Cir. 2011) <u>cert. denied,</u> 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' <u>Iqbal</u>, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' <u>Id</u>. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

In our view, these pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the amended complaint.

## B.  Williams' Amended Complaint Fails to State a Claim Upon Which Relief May be Granted

Judged by these legal guideposts, Williams' amended complaint fails to state a claim upon which relief may be granted for several independent reasons.

First, it is undisputed that Williams has never set aside the parole revocation decision that lies at the heart of this lawsuit. Thus, Williams' amended complaint is premised on the notion that this parole violator may sue individual parole officials for

their roles in a parole revocation decision, even though that decision has never been reversed or set aside.

This legal premise, the lynchpin of Williams lawsuit, is simply incorrect. Indeed, this legal path has been foreclosed by the United States Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477 (1994),and its progeny.  As the United States Court of Appeals for the Third Circuit has explained in rejecting a claim like that made here by Williams, challenging the constitutionality of a parole revocation decision which had not been overturned or set aside:

> In Heck, the Supreme Court held that where success in a § 1983 action would implicitly call into question the validity of conviction or duration of sentence, the plaintiff must first achieve favorable termination of his available state or federal habeas remedies to challenge the underlying conviction or sentence.  Considering Heck and summarizing the interplay between habeas and § 1983 claims, the Supreme Court recently explained that,
>
>> "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of the confinement or its duration."
>
>> Wilkinson v. Dotson, 544 U.S. 74, 81–82, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (emphasis in original).
>
> Thus, the threshold question becomes whether [a parolee's] success on his § 1983 action would "necessarily demonstrate" the invalidity of the Parole Board's decision to revoke his parole, which would in turn render his § 1983 action uncognizable under Heck.  We answer this question in

the affirmative because success on the § 1983 claim would necessarily demonstrate the invalidity of the Parole Board's decision. See White v. Gittens, 121 F.3d 803, 807 (1st Cir.1997) (concluding that § 1983 claim based on revocation of parole was barred by Heck; "[a] favorable decision in the § 1983 proceeding would necessarily call into question the validity of the state's decree revoking [plaintiff's] parole and ordering him back to prison. Heck therefore applies, and the § 1983 action is not cognizable in a federal court"); Butterfield v. Bail, 120 F.3d 1023, 1024 (9th Cir.1997) ("[f]ew things implicate the validity of continued confinement more directly than the allegedly improper denial of parole"). Accordingly, because the Parole Board's decision has not been rendered invalid, [the parolee-plaintiff] may not attack it via a § 1983 action.

Williams v. Consovoy, 453 F.3d 173, 177 (3d Cir. 2006). Indeed, in light of Heck, the court of appeals has held that civil actions of this type, brought by state prisoners whose parole revocation decisions have not been set aside:

lack[] an arguable basis in law [since] Heck holds that a prisoner's civil rights suit for damages or equitable relief is barred unless he can demonstrate that his conviction or sentence has been invalidated. . . . Heck's favorable termination rule applies "no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)-if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005). See also Edwards v. Balisok, 520 U.S. 641, 646-47, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). We [ have ] held . . . that claims [by prisoners whose parole has been revoked] were not cognizable in a section 1983 action on the basis of Heck, because the alleged improper denial of release on parole plainly implicates the validity of continued confinement.

Connolly v. Arroyo, 293 F. App'x 175, 177 (3d Cir. 2008) citing Williams v. Consovoy, 453 F.3d 173 (3d Cir.2006).

In short, this amended complaint is based upon the fundamentally flawed legal premise that Williams can sue state officials for revoking his parole even though that parole revocation has never been set aside. Since this premise is simply incorrect, Williams' amended complaint fails as a matter of law.

Aside from this threshold legal obstacle, Williams' claims fail on a number of other, independent grounds. For example, Williams seeks to hold a supervisory state official, Kimberly Barkley, the Secretary of the Parole Board, personally liable for damages, without reciting well-pleaded facts implicating Barkley in constitutional wrongdoing, based solely upon the fact that Barkley allegedly denied an untimely administrative appeal lodged by Williams following his parole revocation.

This he may not do. Indeed, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendants were agency supervisors when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the

challenged practice.  Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

Thus:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

> As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . .  See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties").  Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal,  556 U.S. 662, 676 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of

evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff

may not maintain an action against supervisors based upon the misdeeds of their subordinates. Rather, "[p]ersonal involvement must be alleged *and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them*. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F. App'x 178, 181 (3d Cir.2006) (emphasis added).

Williams' amended complaint makes no such allegations of direct knowledge, participation or acquiescence in wrongful conduct by Barkley. Moreover, Williams' averment that Barkley after-the-fact denied an untimely administrative appeal which he lodged, without more, does not state a viable claim for supervisory liability against this defendant. See e.g., Paluch v. Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 695 (3d Cir. 2011)(denial of inmate grievance does not state a supervisory liability claim); Speight v. Sims, 283 F. App'x 880 (3d Cir. 2008)(same); Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008)(same). Therefore, Williams' claims against defendant Barkley in her individual capacity as a supervisory official on the Pennsylvania Board of Probation and Parole simply fail as a matter of law.

Furthermore, Williams' constitutional attack upon his parole revocation fails on its merits. At the outset, Williams errs when he suggests that he had some constitutional right to parole, or that this parole revocation decision violated some fundamental constitutional duty owed to him. Quite the contrary, it is well-settled that "[t]here is no constitutional or inherent right of a convicted person to be conditionally

released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); see also Rauso v. Vaughn, 79 F.Supp.2d 550, 551 (E.D.Pa.2000) (the federal constitution does not create an entitlement to parole).  Case law further recognizes that the Pennsylvania parole statute does not create a liberty interest in the right to be paroled.  Burkett v. Love, 89 F.3d 135, 139 (3d Cir.1996); Rodgers v. Parole Agent SCI–Frackville, 916 F.Supp. 474, 476–77 (E.D.Pa.1996); McCrery v. Mark, 823 F.Supp. 288, 294 (E.D.Pa.1993).  Therefore, Williams may not premise his claim on the assertion of some constitutional entitlement to parole.

Since a discretionary decision of the Parole Board denying an inmate early parole does not implicate any constitutionally protected liberty interest, the scope of federal judicial review of these decisions is necessarily quite limited.  In the absence of a specific, articulated constitutional right to parole, the role of this Court in reviewing a state parole denial has been defined by the United States Court of Appeals for the Third Circuit in the following terms:  "[E]ven if a state statute does not give rise to a liberty interest in parole release under Greenholtz, once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons."  Block v. Potter, 631 F.2d 233, 236 (3d Cir.1980); Bonsall v. Gillis, 372 F.Supp.2d 805, 807 (M.D. Pa. 2005)(quoting Block).  However, when ensuring that

state parole denials are not motivated by arbitrary or constitutionally impermissible reasons, it is clear that "federal courts, . . . are not to 'second-guess parole boards', and the requirements of substantive due process are met if there is some basis for the challenged decision." Hunterson v. DiSabato, 308 F.3d 236, 246 (3d Cir. 2002). See also Coady v. Vaughn, 251 F.3d 480, 487 (3d Cir. 2001)(held, federal courts are not authorized by the due process clause to second-guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision). Moreover, the "relevant level of arbitrariness required to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times 'conscience shocking' or 'deliberately indifferent.'" Hunterson, 308 F.3d at 247.

Recognizing this fact, we find that there is nothing about the apparent decision of the Parole Board to revoke Williams' release and forfeit his street time credit after Williams used the liberty of parole as a license to commit new crimes that is conscience shocking or deliberately indifferent. Rather, this action is an informed judgment based upon Williams' criminal recidivism. Furthermore, it is well-settled that, under certain circumstances, state law permits the forfeiture of time spent on parole by criminal recidivists like the petitioner who violate their parole supervision. See 61 Pa.C.S. §§ 6138(a)(2) and (c)(2). Moreover, this aspect of Pennsylvania's parole statute has long been held to be constitutional. See United State ex rel. Lawson

v. Cavell, 425 F.2d 1350, 1352 (3d Cir.1970) (rejecting Eighth Amendment and due process claims).  Indeed, federal courts have often expressly considered this provision of state law, which permits the recalculation and extension of parole release dates for recidivists who violate the terms of their release, and have long held that "[n]o [federal] constitutional question is involved in the Parole Board's failure to give relator credit for time on parole and its adjustment of the expiration date of his new maximum."   United States ex rel. Heacock v. Myers, 251 F.Supp. 773, 774 (E.D.Pa.1966); see United States ex rel. Heacock v. Myers, 367 F.2d 583 (3d Cir.1966) (expressing "complete accord" and affirming opinion of district court in United States ex rel. Heacock v. Myers, 251 F.Supp. 773, 774 (E.D.Pa.1966)).  As this Court observed many years ago when it disposed of a similar inmate complaint:

> P[lainitff] contends that in taking away his "street time" the Board unlawfully extended his maximum sentence in violation of his rights under the Fifth and Fourteenth Amendments.  [The Pennsylvania State parole statute], directing the Pennsylvania Board of Parole to give a recommitted, convicted parole violator no credit for time spent on liberty while on parole, has withstood numerous constitutional challenges in the federal courts.  [This statute] has been held not to violate the due process and equal protection guarantees of the federal constitution, and not to violate the constitutional prohibitions against double jeopardy, bills of attainder, cruel and unusual punishment or ex post facto laws.  See also, United States ex rel. Heacock v. Myers, 251 F.Supp. 773 (E.D.Pa.1966), aff'd per curiam, 367 F.2d 583 (3d Cir.1966), cert. denied, 386 U.S. 925, 87 S.Ct. 900, 17 L.Ed.2d 797 (1967); United States ex rel. Brown v. Pennsylvania Board of Parole, 309 F.Supp. 886 (E.D.Pa.1970); Gomori v. Maroney, 196 F.Supp. 190 (W.D.Pa.1961), aff'd, 300 F.2d 755 (3d Cir.1962).  In view of the foregoing authorities, the Court finds [this] contention without merit.

Choice v. Pennsylvania Bd. of Parole, 448 F.Supp. 294, 298 (M.D.Pa., 1977) (footnotes and citations omitted). These observations remain as pertinent and compelling today as they were in 1977, and continue to rebut any challenge to the Parole Board's compliance with state law, which refuses to reward parole violators with credit for time spent on parole.

Finally, Williams' double jeopardy argument is also unavailing since it has long been held that: "The revocation of a suspended sentence ... followed by the imposition of a prison sentence does not subject a [parolee] to double jeopardy. Pollard v. United States, 352 U.S. 354, 359–361, 77 S.Ct. 481, 1 L.Ed.2d 393 (1954); Dunn v. California Dept. of Corrections, 401 F.2d 340, 342 (C.A.9, 1968); Thomas v. United States, 327 F.2d 795, 797 (C.A.10, 1964), cert. den. 377 U.S. 1000, 84 S.Ct. 1936, 12 L.Ed.2d 1051. See also Commonwealth v. Vivian, 426 Pa. 192, 201, 231 A.2d 301 (1967)." U.S. ex rel. Sole v. Rundle, 435 F.2d 721, 724 (3d Cir.1971). Likewise, the revocation of Williams' parole based upon new criminal conduct does not violate double jeopardy principles simply because Williams is also later criminally prosecuted and sentenced for that new criminal conduct. The parole revocation, and new prosecution, are separate proceedings, which address distinct societal interests and are governed by different elements and burdens of proof. See United State ex rel. Lawson v. Cavell, 425 F.2d 1350, 1352 (3d Cir.1970)(rejecting double jeopardy challenge to

parole revocation and criminal prosecution).  See Cusatis v. Pennsylvania Bd. of Prob. & Parole, No. 1:12-CV-791, 2012 WL 3960317, at *7 8 (M.D. Pa. Aug. 8, 2012) report and recommendation adopted, No. 1:12 CV 0791, 2012 WL 3945480 (M.D. Pa. Sept. 10, 2012).

In sum, Williams' amended complaint fails because:  (1) he has not set aside the parole revocation decision which forms the basis of this claim; (2) his parole revocation does not offend due process or double jeopardy; and (3) Williams may not hold defendant Barkley personally liable to him for the simple act of rejecting an untimely administrative appeal lodged by the plaintiff following his parole revocation. Accordingly, for the foregoing reasons it is recommended that this motion to dismiss be granted, and the plaintiff's complaint be dismissed.

## III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendant's motion to dismiss, (Doc. 16.) be GRANTED, and the plaintiff's amended complaint be dismissed for failure to state a claim upon which relief may be granted.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed

findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 18th day of December 2014.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge